**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| TYLER FERRELL,                     ) | |
|                                    ) | |
|             Plaintiff,             ) | |
|     vs.                            ) | No. 4:11-cv-018-SEB-TAB |
|                                    ) | |
| SHERIFF DARRELL MILLS,             ) | |
|                                    ) | |
|             Defendant.             ) | |

**Entry Discussing Motion for Summary Judgment**

This is a civil rights action in which Tyler Ferrell ("Ferrell") claims that the conditions of his confinement at the Floyd County Jail ("Jail") violated his federally secured rights. The defendant is Floyd County Sheriff Derrell Mills, sued in his official capacity.

Sheriff Mills seeks resolution of Ferrell's claim through the entry of summary judgment and the court, having considered the pleadings, the motion for summary judgment and all materials and briefs related to such motion, finds that the motion for summary judgment must be granted. This conclusion rests on the following facts and circumstances:

1.   A motion for summary judgment must be granted if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Scott v. Edinburg,* 346 F.3d 752, 755 (7th Cir. 2003) (quoting **FED.R.CIV.P.** 56(c) and citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)). A fact is material if it might affect the outcome of the suit under the governing law, and a dispute about a material fact is genuine only if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

   a.   The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Harney v. Speedway SuperAmerica, LLC,* 526 F.3d 1099, 1104 (7th Cir. 2008) (citing cases). "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must — by affidavits or as otherwise provided in this rule — set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." FED. R. CIV. P. 56(e)(2).

b.      To support an assertion that a fact cannot be, or is genuinely disputed, a party must (a) cite to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers or other materials, (b) show that the materials cited do not establish the absence or presence of a genuine dispute, or (c) show that an adverse party cannot produce admissible evidence to support the fact. Fed.R.Civ.P. 56(c)(1)(A) and (B). If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion and grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it. Fed.R.Civ.P. 56(e).

c.      Ferrell filed an opposition to the motion for summary judgment. His opposition consists of a memorandum and an affidavit. The opposition is not accompanied by the S*tatement of Material Facts in Dispute* required by Local Rule 56.1(b). The affidavit consists largely of vague statements and hearsay. These materials are thus of only marginal usefulness to Ferrell meeting his burden as the nonmovant demonstrating that a genuine issue of material fact exists. *Ammons v. Aramark Unif. Servs., Inc.,* 368 F.3d 809, 817 (7th Cir. 2004)(a court is not required to search the record for evidence that supports a party's case). Additionally, the jurat of the affidavit does not meet the evidentiary standard set forth in Rule 56(e)(1). *See Alpert v. United States,* 481 F.3d 404, 409 (6th Cir. 2007) (holding that the affiant's "statement . . . based upon his 'belief' . . . did not demonstrate the personal knowledge required by Fed.R.Civ.P. 56(e)"); *Stewart v. Booker T. Washington Ins.,* 232 F.3d 844, 851 (11th Cir. 2000) ("upon information and belief" insufficient); *Fowler v. Southern Bell Tel. and Tel. Co.,* 343 F.2d 150, 154 (5th Cir. 1965)("knowledge, information and belief" insufficient); *Robbins v. Gould,* 278 F.2d 116, 118 (5th Cir. 1960)("knowledge and belief" insufficient). Materials which do not comply with the standard of Rule 56(e) are disregarded. *Ziliak v. AstraZeneca LP,* 324 F.3d 518, 520 (7th Cir. 2003)(A[A] party's failure to comply with summary judgment evidentiary requirements is traditionally remedied . . . by excluding the non-conforming submission and deeming the opposing party's proposed findings of fact admitted and then determining whether those facts entitle the moving party to judgment as a matter of law.@).

2.      "The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 265 (7th Cir. 1996).

a.      Ferrell=s claim is asserted pursuant to 42 U.S.C. ' 1983. ASection 1983 is not itself a source of substantive rights; instead it is a means for vindicating federal rights elsewhere conferred." *Ledford v. Sullivan,* 105 F.3d 354, 356 (7th Cir. 1997) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, "the first step in any [' 1983] claim is to identify the specific constitutional

right infringed." *Albright v. Oliver,* 510 U.S. 266, 271 (1994).

b. "'[L]awful incarceration brings about the necessary withdrawal or limitation of many privileges or rights, a retraction justified by the considerations underlying our penal system.'" *Pell v. Procunier,* 417 U.S. 817, 822 (1974) (quoting *Price v. Johnston,* 334 U.S. 266, 285 (1948)). A prisoner "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with legitimate penological objectives of the correctional system." *Id.*

c. The dispositive question in relation to the defendant's motion for summary judgment is whether inmates at the Jail are subject to prohibitions in their communications with the media—communications which include any telephone conversations, written correspondence and/or physical visitation—which violate the First Amendment of the United States Constitution.

3. The material facts established by the evidentiary record, construed in the manner most favorable to Ferrell as the non-movant, is the following:

a. Inmates may receive visitors at reasonable times, subject to restrictions "for the purposes of maintaining jail security, individual safety and administrative manageability, place reasonable restrictions on visitation." Visitors must be at least 18 years of age, must have appropriate identification, must adhere to the Jail dress code, may not engage in smoking, must not have a contagious disease or be under the influence of drugs or alcohol, and must pass through a metal detector.

b. There is also a Jail policy regarding correspondence. One feature of that policy is that an inmate may send and receive an unlimited amount of correspondence to or from any person outside the Jail in any language. Correspondence to or from representatives of the public news media may not be opened, read, censored, copied or otherwise interfered with in regards to its prompt delivery or transmission. However, if Jail officials have reasonable grounds to believe that a piece of correspondence may contain contraband or prohibited property, said correspondence may be opened by jail officials in the presence of the addressee for the purpose of examining the contents for contraband or prohibited property. Indigent inmates shall be furnished with free writing supplies and postage sufficient for at least two letters per week.

c. Jail inmates have access to a telephone in the Jail and may use that equipment subject to certain restrictions and requirements. Inmates may contact the media via the jail telephone at any time by purchasing a telephone card from commissary and the telephones are available from approximately 8 a.m. through 10 p.m. each day. Indigent inmates may also make collect calls to any media member via the Jail telephone.

      d.      The Jail does not allow newspapers into the facility because newspapers are a fire risk and a security risk; they are also frequently abused by inmates who use newspaper to roll cigarettes, which is prohibited. Additionally, inmates may observe news on televisions within the Jail from approximately 8 a.m. through 10 p.m. each day.

      e.      Inmates are permitted face-to-face meetings with the media in the visitation rooms but for security purposes, media cameras are not permitted in the communication rooms. Any inmate request to meet with the media is evaluated on a case by case basis and the inmate is required to address his request to the Sheriff.

      4.      Farrell claims that "inmates are prohibited from any kind of communications with media which includes any telephone conversations, written correspondence and/or physical visitation in violation of our U.S. Constitutional Rights under the First Amendment of freedom of the press [sic]." As the foregoing recitation of undisputed facts shows, however, this allegation is false in every respect.

      5.      As a prisoner, Farrell "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with legitimate penological objectives of the correctional system." *Pell v. Procunier,* 417 U.S. 817, 822 (1974).

      a.      Encompassed within the First Amendment is the right to receive and read written publications, *Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989), the right to petition the government for the redress of grievances, *Powers v. Snyder*, 484 F.3d 929, 933 (7th Cir. 2007), and freedom to communicate one's views to any willing listener, including a willing representative of the press for the purpose of publication by a willing publisher. *Pell*, 417 U.S. at 822. However, an inmate's First Amendment rights may be circumscribed when legitimate penological objectives-including crime deterrence, institutional order and security-outweigh preservation of the right. *See, Turner v. Safley,* 482 U.S. 78, 85 (1987). To ensure appropriate deference to the judgment of prison administrators in this regard, *Thornburgh,* 490 U.S. at 407-08, a prison regulation that impinges on inmates' constitutional rights is considered valid if the regulation is reasonably related to legitimate penological interests. *Id.; Turner*, 482 U.S. at 89. In determining whether a prison regulation is "'reasonably related to legitimate penological interests,'" a prisoner "must overcome the presumption that the prison officials acted within their 'broad discretion.'" *Shaw v. Murphy,* 532 U.S. 223 (2001).

      b.      The Supreme Court has outlined four factors that are considered when reviewing a prison regulation: (1) the existence of a valid, rational connection between the prison regulation and the legitimate governmental interest; (2) whether there are alternative means of exercising the constitutional right open to the prisoner; (3) the impact of the accommodation of the asserted constitutional right on guards, other inmates and institution resources; and (4) the existence or absence of ready alternatives to the prison regulation that can

be provided at *de minimis* cost to the institution. *Turner,* 482 U.S. at 89-91. Courts have acknowledged that these factors tend to blend together and are not meant to be weighed according to any precise formula. *Waterman v. Farmer,* 183 F.3d 208 (3d Cir. 1999); *Amatel v. Reno,* 156 F.3d 192 (D.C.Cir. 1998); *Aiello v. Litscher,* 104 F. Supp. 2d 1068, 1075 (W.D.Wis. 2000).

c.     In addition, it is well-established that a court may not substitute its own judgment for that of prison officials when reviewing the validity of prison regulations. *Thornburgh,* 490 U.S. at 407-08; *Turner,* 482 U.S. at 89. Deference to prison officials is appropriate because the judiciary does not possess the necessary expertise and resources to deal with the "difficult and delicate problems of prison management." *Thornburgh,* 490 U.S. at 407; *see also, Procunier v. Martinez,* 416 U.S. 396, 405 (1974). Finally, courts are mindful of the Supreme Court's statement that "where the regulations at issue concern the entry of materials into the prison . . . a regulation which gives prison authorities broad discretion is appropriate." *Thornburgh,* 490 U.S. at 416.

d.     Nonetheless, "prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner,* 482 U.S. at 84. In the midst of a complex and tumultuous environment such as a prison, "[f]ederal courts must take cognizance of the valid constitutional claims of prison inmates." *Babcock v. White,* 102 F.3d 267, 275 (7th Cir. 1996)(quoting *Turner*, 482 U.S. at 84).

6.     This case poses the question whether there are disputed questions of fact which could support a finding that prison officials have overstepped the limits of their considerable discretion. Quite simply, it does not. The evidentiary record in this case shows that the policy is rationally related to the legitimate purpose of preserving security and order in the Jail. *Jordan v. Wolke,* 615 F.2d 749, 753 (7th Cir. 1980); *see Turner v. Safley,* 482 U.S. 78, 92 (1987) ("[T]he core functions of prison administration [are] maintaining safety and internal security."). Prisoners in the jail are allowed to correspond with members of the media and speak to them by telephone. Face-to-face meetings are allowed in certain circumstances. The policy does not prevent them from speaking to members of the media. Farrell has not shown otherwise. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (citations omitted) ("The burden . . . is not on the State to prove the validity of prison regulations but on the prisoner to disprove it.").

For the reasons explained in this Entry, therefore, Sheriff Mills' motion for summary judgment [20] is **granted.** Judgment consistent with this Entry shall now issue.

   **IT IS SO ORDERED.**

Date:   02/10/2012

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana